IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANCIS X. MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 04-10922-DPW |
| ) | |
| INTERNAL REVENUE SERVICE (UNITED ) | |
| STATES GOVERNMENT), ) | |
| ) | |
| Defendant. ) | |

JOINT PRE-TRIAL MEMORANDUM

Pursuant to Local Rule 16.5, the parties hereby submit their joint pre-trial memorandum:

I.       Concise Summary of the Evidence

   a.       Plaintiff Francis Moore:

Mr. Moore asserts that is not a person responsible for collecting, truthfully account for or paying over income and social taxes of American Legion Post # 368. In addition, Mr. Moore asserts that he did not willfully fail to collect, truthfully account for, or pay over these funds to the United States. Mr. Moore will offer his own testimony, as well as the documents that he has identified as exhibits.

   b.       Defendant United States:

Francis Moore is a person responsible for collecting, truthfully accounting for, or paying over the withheld income and social security taxes of American Legion Post #368 for the periods ending December 31, 1993 through December 31, 1995. Further,

1361895.1

Mr. Moore willfully failed to collect, truthfully account for, or pay over the withheld income and social security taxes of American Legion Post #368 for the periods ending December 31, 1993 through December 31, 1995.

The United States will offer testimony in the form of its cross-examination of the plaintiff in this action, Francis Moore, and on the direct examination of Joseph Cannata and Robert Gooch. It is anticipated that both Robert Gooch and Francis Moore will testify to the day-to-day operations of American Legion Post #368, including the financial procedures in place regarding the payment of bills and the critical role that Mr. Moore played in these operations. It is anticipated that Mr. Cannata will testify to his receipt of wages from American Legion Post #368, as well as the manner in which he received this payment and reported it to Mr. Moore.

The United States will also offer documentary evidence including canceled checks, a finance committee report and board meeting minutes that demonstrate that not only was Mr. Moore responsible for the payment of ordinary and necessary bills for the American Legion Post, he was also aware that the Post (1) was paying wages to its bartenders and bar manager without reporting these wages to the Internal Revenue Service, (2) was not withholding the proper amount in tax from these wages, and (3) was not making the requisite employment tax payments to the Internal Revenue Service.

II.  Stipulated Facts:

    a.  On January 28, 2003, the Internal Revenue Service made assessments pursuant to 26 U.S.C. § 6672 against Mr. Moore

    relating to the withheld taxes of employees of the American Legion Post #368 for the periods ending December 31, 1993, March 31, 1994, June 30, 1994, September 30, 1994, December 31, 1994, March 31, 1995, June 30, 1995, September 30, 1995, and December 31, 1995.

b. The total amount assessed was $27,472.81. The balance due on the *assessed* liabilities is $18,123.90.[1]

c. Francis Moore made nine $100.00 payments against this liability which were credited on March 17, 2003 and filed a claim for refund with regard to those payments. Mr. Moore then filed the instant complaint on May 10, 2004 seeking a refund of his payments and an abatement of the remaining liabilities. The United States filed a counter-claim seeking to reduce the remaining assessments to judgment.

d. During the period in question (1993 - 1995), American Legion Post #368 had incorporated.

e. Mr. Moore was employed as an IRS revenue officer for 29 ½ years.

f. During that time, Mr. Moore likely handled over one thousand (1000) responsible person cases, and he was familiar with the requirements of federal tax law regarding employment taxes, specifically 26 U.S.C. § 6672, the responsible person provisions.

---

[1] This amount does not include any interest that has accrued subsequent to the assessment date of January 28, 2003.

*Responsibility*:

    g.    Francis Moore became the Finance Officer for American Legion Post #362 on July 1, 1992, and remained in that position for four years, encompassing all of the periods in question.

    h.    As Finance Officer, Mr. Moore was a member of the Board of Directors of the American Legion Post.

    i.    As a board member, he was expected to attend every meeting of the Board of Directors.

    j.    The Board of Directors met at least once a month, except for July and August, 1994 and 1995.

    k.    If an individual missed a meeting, it was recorded in the minutes of the meeting.

    l.    Mr. Moore never missed 2 meetings in a row.

    m.    In his role as Finance Officer, Mr. Moore had check signing authority over the American Legion checking account, along with the Post Commander. See Exhibit C at pp. 49, 56, 60.

    n.    Each check required the signatures of both the Finance Officer and the Commander, and these two individuals were the only individuals with check signing authority. See Exhibit C at pp. 49, 56, 60; Exhibit D at p. 13.

    o.    Mr. Moore, as the Finance Officer, controlled the two checking accounts for the American Legion Post. See Exhibit C at p. 29; Exhibit D at pp. 11-12, 33.

p.  All invoices were presented to Mr. Moore for payment.  <u>See</u> Exhibit C at p. 49; Exhibit D at p. 11; Exhibit E at p. 32.

q.  For routine expenses, Mr. Moore prepared the checks for signature, signed the checks, and then left those checks with the Commander for his counter-signature.

r.  On no occasion did any Commander challenge Mr. Moore's determinations as to the payment of bills; no Commander ever refused to sign a check, or even questioned a bill when presented by Mr. Moore.

s.  Each commander during the period in question signed each check given to him by Mr. Moore and returned the checks to Mr. Moore to be mailed.

t.  At the time that Mr. Moore became Finance Officer, he was offered a "stamp" of the Commander's signature for purposes of signing these checks.

*Willfulness*:

u.  The Post ran a cash bar on its premises for which it maintained a bartender at all times that the bar was open, which was from noon to 1 a.m., seven days a week.

v.  These bartenders had set schedules, and if a bartender wanted to miss a shift, he was responsible for finding a replacement.

w.  The Post also operated a function hall, which it regularly rented out for events such as showers, weddings, and birthday parties.

    x.    This function hall was also staffed by the Post with at least one bartender for each event; some occasions required two bartenders.

    y.    There was also a bar manager hired by the American Legion Post to oversee the operations of the bar.

    z.    During all periods in question, Mr. Cannata was the bar manager and Francis Moore was the finance manager.

    aa.    A Finance Committee Report was prepared and submitted to the Post Executive Board and Corporation Board of Directors on August 17, 1993.

    bb.    This Finance Committee Report was then presented at a Board of Directors' meeting for a vote on August 23, 1993, and the events from that meeting were memorialized in minutes dated August 24, 1993.

    cc.    Included in the minutes is an indication that Mr. Moore was present at this meeting; he is not listed as absent.

III.    Contested Facts:

*Plaintiff's Statement of Contested Facts*:

    a.    Whether Francis Moore is a person required to collect, truthfully account for or pay over trust fund taxes for American Legion Post #368 for the periods ending December 31, 1993 through December 31, 1995.

    b.    Whether Francis Moore willfully failed to collect, truthfully account for, or pay over these trust fund taxes.

*Defendant's Statement of Contested Facts*:

a. The Commander and the Finance Officer had the authority to pay ordinary and necessary bills for the Post, and in fact did pay all ordinary expenses as a matter of course.

b. Only extraordinary, or unusual, expenses were put up to the membership for a vote.

c. These expenses included boots for the color guard or trip expenses for a member, for example.

d. The board members of the Post relied totally on Frankie Moore to pay the bills of the Post and oversee the finances.

e. The bar manager, Joseph Cannata, was paid $100/ week when he started, and this amount was raised to $200/week during 1993.

f. On Fridays, the bar manager left a written statement in the finance manager's in-box, with the liquor invoices and other bills, indicating that he was taking his weekly wages.

g. In the finance committee report, the finance committee recommended to the Board of Directors "[t]hat any and all gratuitous payments (i.e. bartenders, bar manager, adjutant, finance officer, etc. be looked into seriously and stopped immediately). . . The total yearly gratuitous pay-out . . . comes to the total sum of $30,244.00."

h. The Finance Committee further recommended that the Board of Directors "look for Post members to volunteer their services as

bartenders and bar manager until some time in the future when our Corporation assets will allow us to pay the bartenders and bar manager again."

i. Mr. Moore's signature appears as a "Member ex-officio Finance Officer."

j. According to the minutes of the August 23, 1993 meeting, "the Finance Committee submitted their final report to the executive board and recommended that all payments to Post workers cease to exists [sic] immediately. They stated that thils [sic] output of funds was hurting the Post finances and the Post would benifit [sic] if this was stopped and all work done in the Post was voluntery [sic]."

k. A vote was held at which the recommendations of the Finance Committee were rejected.

l. On August 30, 1993, a further Post meeting was held.

m. At this meeting, members of the Post appear to have re-thought their original position, and they voted to accept the recommendations of the Finance Committee.

n. However, on November 29, 1993, the members voted again, this time rescinding their support for the elimination of payments to the Post workers.

    o.    The members further voted to *increase* the amount to be paid to the bar manager from $100.00 to $200.00 per week, so long as the bar manager continued to be Joe Cannata.

    p.    The minutes indicate that Mr. Moore was present at each of the meetings at which the Finance Committee recommendations were discussed.

    q.    Mr. Moore was aware that the bartenders were receiving tips.

IV.    Jurisdictional Questions:

None.

V.    Questions Raised by Pending Motions:

None at this time, though the United States reserves the right to file motions in limine regarding the attempted use of certain exhibits by Mr. Moore.

VI.    Issues of Law:

    a.    Whether Francis Moore is a person required to collect, truthfully account for or pay over trust fund taxes of American Legion Post #368 for the periods ending December 31, 1993 through December 31, 1995.

    b.    Whether Francis Moore willfully failed to collect, truthfully account for or pay over trust fund taxes of American Legion Post # 368 for the periods ending December 31, 1993 through December 31, 1995.

**Plaintiff's Discussion of the Law**:

Mr. Moore asserts that he was not a person responsible for the collection, accounting for, or payment of trust fund taxes for American Legion Post. Mr. Moore further asserts that he did not willfully fail to collect, truthfully account for, or pay over trust fund taxes for American Legion Post # 368. For support of his argument, Mr. Moore points to the two following cases, which were provided to counsel for the United States and are attached hereto:

1. United States v. Clifford (In re Eugene Clifford), U.S. District Court, D. Massachusetts (2000), Case No. 99-cv-40214-NMG

2. Richard Lee v. United States, U.S. District Court, D. Hawaii (1989), Case No. 85-0789

**Defendant's Discussion of the Law**:

A.  *Taxpayer Bears the Burden of Showing That He Is Not Liable For the Taxes At Issue In This Proceeding*

In all tax suits, the Internal Revenue Service's determinations are presumed correct, and the taxpayer bears the burden of proof and persuasion to show otherwise. See Lefebvre v, Commissioner of Internal Revenue, 830 F.2d 417, 419 n.3 (1st Cir. 1987); United States v. Rexach, 482 F.2d 10, 15-17 (1st Cir.), *cert. denied* 414 U.S. 1039 (1973). The determinations of the Internal Revenue Service are entitled to the presumption of correctness and thus the taxpayer bears the burden of proving it wrong.[2]

---

[2] A presumption of regularity supports the official acts of public officers, including employees of the Internal Revenue Service, and, in the absence of clear evidence to the contrary, it is presumed that public officials have properly discharged their official duties. See United States v. Chemical Foundation,

See Welch v. Helvering, 290 U.S. 111, 115 (1933); United States v. McCombs, 30 F.3d 310, 318 (2nd Cir. 1994). If the taxpayer fails to produce countervailing proof that the assessments are incorrect, the district court will be required to enter summary judgment in favor of the United States. See Niemela v. United States, 1993 WL 198171, *3 (1st Cir, 1993). See also Rexach, 482 F.2d at 17 ("the burden of going forward and of ultimate persuasion are always on the taxpayer and never shift to the Commissioner").

Internal Revenue Service Forms 4340 constitute presumptive proof that the assessment was made pursuant to the statutory provisions. See Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992), *citing* United States v. Chila, 871 F.2d 1015 (11th Cir. 1989); Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991). See also Long v. United States, 972 F.2d 1174, 1181 (10th Cir. 1992); Gentry v. United States, 962 F.2d 555, 557 (6th Cir. 1992); United States v. Miller, 318 F.2d 637, 637 (7th Cir. 1963). In this case, the Forms 4340, which will be introduced into evidence at trial, provide presumptive evidence that the assessments are proper, and in full compliance with the requirements of the Internal Revenue Code.

    C.    *Francis Moore Is a Responsible Person Pursuant to 26 U.S.C. § 6672*

    1.    The Statutory Structure Imposing Liability

Sections 3102(a) and 3402(a) of the Internal Revenue Code (26 U.S.C.), require an employer to deduct and withhold income and social security taxes from the wages paid to its employees. Section 7501 of the Internal Revenue Code provides that the

---

Inc., 272 U.S. 1, 14-15 (1926); Rexach, 482 F.2d at 17. Under this principle, the official acts of the Internal Revenue Service, reflected in and underlying the records of the Internal Revenue Service, are presumed to be proper, and all necessary prerequisites to the validity of the official actions are presumed to have been complied with. See Lewis, et al. v. United States, 279 U.S. 63, 73 (1929).

"amount of tax so collected shall be held by the employer as a special trust fund for the benefit of the United States." A fiduciary duty is imposed regardless of whether the taxes are actually collected, segregated, and treated as a trust res. These "trust fund taxes" are for the exclusive use of the United States and are not to be used to pay the employer's business expenses, including payroll, or for any other purpose. See 26 U.S.C. § § 3102(b); 3403; 7501(a). See also Vinick v. United States, 205 F.3d 1, 3 (1st Cir. 2000); Thibodeau v. United States, 828 F.2d 1499, 1506 (11th Cir, 1987); Gephardt v. United States, 818 F.2d 469, 472 (6th Cir. 1987).

Section 6672 of the Internal Revenue Code was enacted to protect the revenue of the United States against losses from these unpaid withholding taxes by providing it with another source from which to collect the taxes. See, e.g., Harrington v. United States, 504 F.2d 1306, 1311 (1st Cir. 1974); Gephardt, 818 F.2d at 473. It provides that "[a]ny person required to collect, truthfully account for and pay over such tax, . . . shall, . . . be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672. This liability has traditionally been referred to as a 100 percent penalty, and, more recently as the trust fund recovery penalty. "Even though Section 6672 is characterized by the Internal Revenue Code as a penalty, it may be more accurately described as a mechanism for shifting the tax of the corporation to those responsible for its non-payment." Kinnie v. United States, 771 F.Supp. 842, 848 (ED Mich. 1991) (quoting Waghalter v. United States, 79-2 U.S.T.C. ¶ 9717 (SD Tex. 1979). See also United States v. Sotelo, 436 U.S. 268, 275 (1978); Harrington, 504 F.2d at 1311.

In order for a person to be liable under Section 6672, two factors must exist:

(1) he must have been a person required to collect, truthfully account for, or pay over the employment taxes;[3] and

(2) as such a person, he must have willfully failed to collect, truthfully account for, or pay over the trust fund taxes.

Vinick v. United States, 205 F.3d 1, 3 (1st Cir. 2000) (Vinick II). It is "well-established that the test for determining the responsibility of a person under § 6672 is essentially a functional one, focusing on the degree of influence and control which the person exercised over the financial affairs of the corporation, and, specifically, disbursements of funds and the priority of payments to creditors." Gephardt, 818 F.2d at 473.

"Person" as used in 26 U.S.C. § 6672 includes an officer or employee of a corporation who is under a duty to collect and remit the taxes to the United States. See 26 U.S.C. § 6671(b). Thus, Section 6672 authorizes the collection of the taxes from those persons who were responsible for the corporation's failure to pay them. See Gephardt, 818 F.2d at 475. Moreover, more than one person can satisfy the above criteria and be a responsible person. See Harrington v. United States, 504 F.2d 1306, 1312 (1st Cir. 1974); Gephardt, 818 F.2d at 476.

Because of this, liability under Section 6672 is not limited to "the single officer with the greatest or the closest control or authority over corporate affairs." Gephardt, 818 F.2d at 476. The fact that an individual may be more responsible, or have more authority with respect to the functioning of the corporation, is not sufficient to preclude a finding of liability against a "less responsible" individual who still satisfies the

---

[3] Although the statute is articulated in the conjunctive, it has been interpreted in the disjunctive. See Slodov v. United States, 436 U.S. 238, 247-48, 250 (1978).

requirements of 26 U.S.C. § § 6671 & 6672.  See Harrington, 504 F.2d at 1312; Gephardt, 818 F.2d at 476.  However, when more than one person has been assessed for the same unpaid taxes under 26 U.S.C. § 6672, the government collects the unpaid tax only once, and it credits the account of one assessed person for payments made by another assessed for the same taxes under the statute.  See Hartman v. United States, 535 F.2d 1336, 1340 (8th Cir. 1976); Newsome v. United States, 431 F.2d 742, 745 (5th Cir. 1970).

Once a responsible person assessment has been made by the government pursuant to 26 U.S.C. § 6672, the taxpayer must prove, by a preponderance of the evidence, that he does not owe the tax.  See Caterino v. United States, 794 F.2d 1, 5 (1st Cir. 1986); United States v. Rexach, 482 F.2d 10, 16-17 (1st Cir. 1973); Kinnie, 994 F.2d at 283.

    2.    *Responsibility*

Liability as a responsible person is predicated upon the existence of significant, as opposed to absolute, control over the corporation's finances.  See Vinick II, 205 F.3d at 9; Caterino, 794 F.2d at 5 ("the word final means significant rather than exclusive control over the disbursement of funds"); Gephardt, 818 F.2d at 473; Hochstein v. United States, 900 F.2d 543, 547 (2nd Cir. 1990). Financial involvement indicates that the taxpayer not only was involved in the daily management of the company, but also knew the financial circumstances and could have paid the government."  Vinick II, 205 F.3d at 10.   Fundamentally, responsibility "is a matter of status, duty, and authority." Vinick v. United States (Vinick I), 110 F.3d 168, 172 (1st Cir. 1997); Thomsen v. United States, 887 F.2d 12, 15 (1979).  "The crucial inquiry is whether the person had the

effective power to pay the taxes – that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." Vinick II, 205 F.3d at 8.  A person can be responsible without having complete control over an entity's financial affairs.  See, e.g., Denbo v. United States, 988 F.2d 1029, 1033 (10th Cir. 1993).  Furthermore, as is relevant in this case, a two-signature requirement on checking accounts does not eliminate an individual's status as a responsible person. See, e.g., Thomas v. United States, 41 F.3d 1109, 1114 (7th Cir. 1994); Godfrey v. United States, 748 F.2d 1568, 1576 (Fed.Cir. 1984); Simpson v. United States, 664 F.Supp. 43, 48 (EDNY 1987) (observing that if the need for two signatures on checks was a defense to responsible person status, section 6672 could be subverted by implementing diffuse check-signing authority).

No single fact is in itself dispositive of whether a person is a responsible person under 26 U.S.C. § 6672, especially in a case such as this, where the taxes were not reported, withheld, segregated, or paid over and no returns were filed.[4]  Certain facts, however, are considered by the court in analyzing whether a person is responsible, including whether such a person (1) is an officer or member of the board of directors; (2) is active in the management of the day-to-day affairs of the company; (3) make decisions regarding which, when, and in what order outstanding corporate debts, including taxes, will be paid; (4) exercises control over bank accounts and disbursement records; and (5) has check signing authority.  See Vinick II, 205 F.3d at 7.

---

[4] The IRS investigated, after the fact, to determine how much was owed by American Legion Post after its failure to report the wages paid to the bartenders.

3.   *Willfulness*

Liability attaches to a "responsible person" under Section 6672 if he "willfully" fails to collect, account for, or pay over the withheld taxes. "A responsible person acts willfully within the meaning of § 6672 whenever 'he acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes.'" Honey v. United States, 963 F.2d 1083, 1087 (8th Cir. 1992). That a taxpayer acted willfully does not mean that he acted with a bad or evil motive; rather it means that the taxpayer makes a voluntary, conscious and intentional choice to pay creditors other than the United States. See Thomsen, 887 F.2d at 17; Honey, 963 F.2d at 1087. A responsible person has also acted willfully even if a superior instructed him not to pay the unpaid tax. See Broustein v. United States, 979 F.2d 952, 956 (3rd Cir. 1992); Roth v. United States, 779 F.2d 1567, 1571-72 (11th Cir. 1986). Finally, and importantly in this case, an individual acts willfully if he acts with a "reckless disregard" of a known or obvious risk of nonpayment. See Vinick I, 110 F.3d at 172; Thomsen, 887 F.2d at 18 ("a responsible person is liable if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out very easily") (citations omitted).

VII.   Requested Amendments to the Pleadings:
       None.

VIII.  Additional Matters to Aid in the Disposition of the Action:
       None.

IX. Probable Length of Trial:

1 day.

X. Witness List:

Plaintiff:

> Francis Moore
> 56 Story Street
> South Boston, MA 02127

Defendant:

> Francis Moore
> 56 Story Street
> South Boston, MA 021
>
> Robert Gooch
> 295 West Third Street
> South Boston, MA 02127
>
> Joe Cannatta
> 21 ½ Mt. Vernon Street
> Dorchester, MA 02125

XI. Exhibit List

a. Joint Exhibits:

(1) Post and Corporation Finance Committee Report dated August 17, 1993

(2) Minutes dated August 24, 1993 from August 23, 1993 Post Meeting

(3) Minutes dated September 26, 1993 from August 30, 1993 Post Meeting

      (4)    Minutes dated November 30, 1993 from November 29, 1993 Post Meeting

      (5)    By-Laws of the American Legion Post #368

      (6)    Copies of Canceled Checks

      (7)    Copies of Bank Statements

b.    Plaintiff's Exhibits:[5]

      (1)    Form 886-A - page 13.

      (2)    Form 886-A - page 15.

      (3)    Narrative to TFRP Recommendation for American Legion Post #368, pp. 1-2.

      (4)    Letter from Internal Revenue Service to Francis Moore dated August 9, 2004

      (5)    Information Document Request A-1 from Internal Revenue Service to American Legion Post dated September 21, 1995

      (6)    Response by American Legion Post to Information Document Request A-1 dated September 22, 1995.

      (7)    Information Document Request A-2 from Internal Revenue Service to American Legion Post dated December 6, 1995.

      (8)    Letter from Francis Moore to the Internal Revenue Service dated January 18, 2001.

---

[5] The United States reserves the right to file motions in limine to preclude the use of some of these exhibits.

(9) Letter from Post Commander Robert Egan to the Internal Revenue Service dated December 26, 1995

(10) Letter from American Legion Post # 368 to the Internal Revenue Service dated October 10, 1995

(11) Annual Reports for Calendar Years ending 1993, 1994, and "1996"

(12) Minutes from a Board of Director's Meeting dated June 6, 1996

(13) Letter from Francis Moore to Internal Revenue Service (undated)

(14) History Sheets from Internal Revenue Service Records

(15) Copy of Summons Issued to Francis Moore as Treasurer of American Legion Post # 368

(16) Internal Revenue Manual Section 5.7.3

(17) "Revised Policy Statement P-5-60"

(18) Letter from Internal Revenue Service to Francis Moore dated October 30, 1996

(19) Annual Report for the American Legion Post # 368 for "1996-97"

(20) Letter from Francis Moore to Internal Revenue Service dated November 22, 2002

      c.     Defendant's Exhibits:

           (1)     Forms 4340 for the periods ending December 31, 1993, March 31, 1993, June 30, 1993, September 30, 1993, December 31, 1994, March 31, 1995, June 30, 1995, September 30, 1995, and December 31, 1995.

XII.    Parties' Respective Positions on Any Remaining Objections to the Evidence Identified in the Pre-Trial Disclosure Required by Fed.R.Civ.Pro. 26(a)(3):   The parties have no objections to be made pursuant to Fed.R.Civ.Pro. 26(a)(3).


RESPECTFULLY SUBMITTED:


| For Plaintiff Francis Moore: | For Defendant United States: |
|---|---|
|   FXM (after consultation)<br>FRANCIS X. MOORE, Pro Se<br>56 Story Street<br>South Boston, Massachusetts 02127<br>(617) 269-0941 |   /s/ Lydia Bottome Turanchik<br>LYDIA BOTTOME TURANCHIK<br>U.S. Dept. of Justice, Tax Division<br>Post Office Box 55<br>Ben Franklin Station<br>Washington, D.C. 20044<br>(202) 307-6560 |