IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANCIS X. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 04-10922-DPW |
| | ) | |
| INTERNAL REVENUE SERVICE (UNITED | ) | |
| STATES GOVERNMENT), | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES' TRIAL BRIEF AND OPPOSITION TO THE ADMISSION OF
PLAINTIFF'S LISTED TRIAL EXHIBITS

I.    **UNITED STATES' STATEMENT OF FACTS**

American Legion Post # 368, a corporation, failed to file employment tax returns

or pay to the Internal Revenue Service employment taxes with regard to its employees,

for the taxable periods ending December 31, 1993, March 31, 1994, June 30, 1994,

September 30, 1994, December 31, 1994, March 31, 1995, June 30, 1995, September

30, 1995, and December 31, 1995.  Following an examination, the Internal Revenue

Service made an assessment against the American Legion Post for the employment

taxes it should have been withholding, reporting, and paying over.  On January 28,

2003, the Internal Revenue Service made assessments pursuant to 26 U.S.C. § 6672

against Francis X. Moore as a responsible person who willfully failed to withhold,

truthfully account for, or pay over to the Internal Revenue Service the income and

F.I.C.A. taxes relating to the compensation of bartenders, the bar manager and certain

officers serving at the American Legion Post #368 for the periods identified above.  The

total amount assessed was $27,472.81. The balance due on the *assessed* liabilities is

$18,123.90.[1]


A.    *Responsibility*

Francis Moore became the Finance Officer for Post # 368 on July 1, 1992, and

remained in that position for four years, encompassing all of the periods in question.  As

Finance Officer, or Treasurer, Mr. Moore was a member of the Board of Directors of the

Post.   As a board member, he was expected to attend every meeting, and Mr. Moore

asserts that he never missed 2 meetings in a row.  Furthermore, if an individual missed

a meeting, it would be recorded in the minutes of the meeting.

In his role as Finance Officer, Mr. Moore had check-signing authority over the

Post's checking account, along with the Post Commander.  Each check required the

signatures of both the Finance Officer and the Commander, and these two individuals

were the only individuals with check-signing authority.  Mr. Moore, as the Finance

Officer, controlled the books and records of the Post, including the checkbook.  All

invoices were presented to Mr. Moore, and he determined which bills were to be paid

and when.

The Commander and the Finance Officer had the authority to pay ordinary and

necessary bills for the Post, and in fact did pay all ordinary expenses as a matter of

---

[1]  This amount does not include any interest that has accrued subsequent to the assessment date
of January 28, 2003.

1414273.3

course.[2]   For these routine expenses, Mr. Moore prepared the checks for signature pursuant to his determination as to which bills needed to be paid, signed the checks, and then left those checks with the Commander for his counter-signature.  On no occasion did the Commander ever challenge Mr. Moore's determinations as to the payment of bills; the Commander simply signed the checks and returned them to Mr. Moore to be mailed.  Mr. Moore also concedes that, at the time that he became Finance Officer, he was offered a "stamp" of the Commander's signature for purposes of signing these checks.  In fact, in his four years as Finance Manager, no Commander ever refused to sign a check, or even questioned a bill when presented by Mr. Moore.

B.    *Willfulness*

Mr. Moore was employed as an IRS revenue officer for 29 ½ years.  During that time, Mr. Moore asserts that he handled over one thousand (1000) responsible person cases, and that he was familiar with the requirements of federal tax law regarding employment taxes, specifically 26 U.S.C. § 6672, the responsible person provisions.

The Post ran a cash bar on its premises for which it maintained a bartender at all times that the bar was open, which was from noon to 1 a.m., seven days a week.  The Post also operated a function hall, which it regularly rented out for events such as showers, weddings, and birthday parties.  This function hall was also staffed by the Post with at least one bartender for each event, and some occasions even required two

---

[2]  Only extraordinary, or unusual, expenses were put up to the membership for a vote.  <u>See</u> Exhibit D at p. 14.  These expenses included boots for the color guard or trip expenses for a member, for example.

1414273.3

bartenders.   These bartenders had set schedules, and if a bartender wanted to miss a shift, he was responsible for finding a replacement.

There was also a bar manager hired by the Post to oversee the operations of the bar.  During all periods in question, Mr. Cannata was the bar manager and Francis Moore was the Finance Manager.  Mr. Cannata was paid $100/ week when he started prior to the periods at issue, and this amount was raised to $200/week during 1993.  On Fridays, the bar manager left a written statement in the Finance Manager's in-box, with the liquor invoices and other bills, indicating that he was taking his weekly wages.

A finance committee report indicating then-current wage payments in excess of $30,000.00 yearly was prepared and submitted to the Post Executive Board and Corporation Board of Directors on August 17, 1993.  In that report, the Finance Committee recommended to the Board of Directors:

> [t]hat any and all gratuitous payments (i.e. bartenders, bar manager, adjutant, finance officer, etc. be looked into seriously and stopped immediately).  *Each week we are paying out to all bartenders a combined total of $372.00 with the bar manager and the finance officer each receiving $100.00 for a total weekly pay-out of $572.00.  The total monthly pay-out comes to $2,288.00.*  The total yearly gratuitous pay-outs including bartenders, bar manager, adjutant and finance officer comes to the total sum of $30,244.00.

(Emphasis added.)  The Finance Committee further recommends that the Board of Directors "look for Post members to volunteer their services as bartenders and bar manager until some time in the future when our Corporation assets will allow us to pay the bartenders and bar manager again."  Mr. Moore's signature appears as a "Member ex-officio Finance Officer."

This Finance Committee Report was then presented at a Board of Directors' meeting for a vote on August 23, 1993, and the events from that meeting were memorialized in minutes dated August 24, 1993.   According to the minutes of the meeting, "the Finance Committee submitted their final report to the executive board and recommended that all payments to Post workers cease to exists [sic] immediately. They stated that thils [sic] output of funds was hurting the Post finances and the Post would benifit [sic] if this was stopped and all work done in the Post was voluntery [sic]." A vote was held at which the recommendations of the Finance Committee were rejected.  The Post would continue to pay its workers, including the bartenders and bar manager.

On August 30, 1993, a further Post meeting was held.  At this meeting, members of the Post appear to have re-thought their original position, and they voted to accept the recommendations of the Finance Committee.  However, on November 29, 1993, the members voted again, this time rescinding their support for the elimination of pay for the Post workers.  The members further voted to *increase* the amount to be paid to the bar manager from $100.00 to $200.00 per week, so long as the bar manager continued to be Joe Cannata.  Mr. Moore was present at each of these meetings as his absence is not noted on the meeting minutes.

1414273.3

II.    **ARGUMENT**

A.    **Taxpayer Bears the Burden of Showing That He Is Not Liable For the Taxes At Issue In This Proceeding**

In all tax suits, the Internal Revenue Service's determinations are presumed to be correct, and the taxpayer bears the burden of proof and persuasion to show otherwise.  See Lefebvre v, Commissioner of Internal Revenue, 830 F.2d 417, 419 n.3 (1st Cir. 1987); United States v. Rexach, 482 F.2d 10, 15-17 (1st Cir.), *cert. denied* 414 U.S. 1039 (1973).  The determinations of the Internal Revenue Service are entitled to the presumption of correctness and thus the taxpayer bears the burden of proving it wrong.[3]  See Welch v. Helvering, 290 U.S. 111, 115 (1933); United States v. McCombs, 30 F.3d 310, 318 (2nd Cir. 1994).  If the taxpayer fails to produce countervailing proof that the assessments are incorrect, the district court will be required to enter judgment in favor of the United States.  See Niemela v. United States, 1993 WL 198171, *3 (1st Cir. 1993).  See also Rexach, 482 F.2d at 17 ("the burden of going forward and of ultimate persuasion are always on the taxpayer").

Internal Revenue Service Forms 4340 constitute presumptive proof that the assessment was made pursuant to the statutory provisions.  See Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992), *citing* United States v. Chila, 871 F.2d 1015 (11th Cir. 1989); Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991).  See also

---

[3]  A presumption of regularity supports the official acts of public officers, including employees of the Internal Revenue Service, and, in the absence of clear evidence to the contrary, it is presumed that public officials have properly discharged their official duties.  See United States v. Chem. Found., Inc., 272 U.S. 1, 14-15 (1926); Rexach, 482 F.2d at 17.  Under this principle, the official acts of the Internal Revenue Service, reflected in and underlying the records of the Internal Revenue Service, are presumed to be proper, and all necessary prerequisites to the validity of the official actions are presumed to have been complied with.  See Lewis, et al. v. United States, 279 U.S. 63. 73 (1929).

1414273.3

Long v. United States, 972 F.2d 1174, 1181 (10th Cir. 1992); Gentry v. United States, 962 F.2d 555, 557 (6th Cir. 1992); United States v. Miller, 318 F.2d 637, 637 (7th Cir. 1963). In this case, the Forms 4340 provide presumptive evidence that the assessments are proper, and in full compliance with the requirements of the Internal Revenue Code.

B.    **Francis Moore Is a Responsible Person Pursuant to 26 U.S.C. § 6672**

1.    The Statutory Structure Imposing Liability

Sections 3102(a) and 3402(a) of the Internal Revenue Code (26 U.S.C.), require an employer to deduct and withhold income and social security taxes from the wages paid to its employees. Section 7501 of the Internal Revenue Code provides that the "amount of tax so collected shall be held by the employer as a special trust fund for the benefit of the United States." A fiduciary duty is imposed regardless of whether the taxes are actually collected, segregated, and treated as a trust *res*. These "trust fund taxes" are for the exclusive use of the United States and are not to be used to pay the employers business expenses, including payroll, or for any other purpose. See 26 U.S.C. § § 3102(b); 3403; 7501(a). See also Vinick v. United States, 205 F.3d 1, 3 (1st Cir. 2000); Thibodeau v. United States, 828 F.2d 1499, 1506 (11th Cir, 1987); Gephardt v. United States, 818 F.2d 469, 472 (6th Cir. 1987).

Section 6672 of the Internal Revenue Code was enacted to protect the United States against losses from these unpaid withholding taxes by providing it with another source from which to collect the taxes. See, e.g., Harrington v. United States, 504 F.2d 1306, 1311 (1st Cir. 1974); Gephardt, 818 F.2d at 473. It provides that "[a]ny person

1414273.3

required to collect, truthfully account for and pay over such tax, . . . shall, . . . be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672. This liability has traditionally been referred to as a 100-percent penalty, and, more recently, as the trust fund recovery penalty. "Even though Section 6672 is characterized by the Internal Revenue Code as a penalty, it may be more accurately described as a mechanism for shifting the tax of the corporation to those responsible for its non-payment." Kinnie v. United States, 771 F.Supp. 842, 848 (E.D. Mich. 1991) (quoting Waghalter v. United States, 79-2 U.S.T.C. ¶ 9717 (S.D. Tex. 1979)). See also United States v. Sotelo, 436 U.S. 268, 275 (1978); Harrington, 504 F.2d at 1311.

In order for a person to be liable under Section 6672, two factors must exist:

(1)    he must have been a person required to collect, truthfully account for, or pay over the employment taxes;[4] and

(2)    as such a person, he must have willfully failed to collect, truthfully account for, or pay over the trust fund taxes.

Vinick v. United States, 205 F.3d 1, 3 (1st Cir. 2000) (Vinick II). It is "well-established that the test for determining the responsibility of a person under § 6672 is essentially a functional one, focusing on the degree of influence and control which the person exercised over the financial affairs of the corporation, and, specifically, disbursements of funds and the priority of payments to creditors." Gephardt, 818 F.2d at 473.

_____

[4] Although the statute is articulated in the conjunctive, it has been interpreted in the disjunctive. See Slodov v. United States, 436 U.S. 238, 247-48, 250 (1978).

- 8 -

"Person" as used in 26 U.S.C. § 6672 includes an officer or employee of a corporation who is under a duty to collect and remit the taxes to the United States.  See 26 U.S.C. § 6671(b).  Thus, Section 6672 authorizes the collection of the taxes from those persons who were responsible for the corporation's failure to pay them.  See Gephardt, 818 F.2d at 475.   Moreover, more than one person can satisfy the above criteria and be a responsible person.  See Harrington, 504 F.2d at 1312; Gephardt, 818 F.2d at 476.

Because of this, liability under Section 6672 is not limited to "the single officer with the greatest or the closest control or authority over corporate affairs."  Gephardt, 818 F.2d at 476.  The fact that an individual may be more responsible, or have more authority with respect to the functioning of the corporation, is not sufficient to preclude a finding of liability against a "less responsible" individual who still satisfies the requirements of 26 U.S.C. § § 6671 & 6672.  See Harrington, 504 F.2d at 1312; Gephardt, 818 F.2d at 476.  However, when more than one person has been assessed for the same unpaid taxes under 26 U.S.C. § 6672, the government collects the unpaid tax only once, and it credits the account of one assessed person for payments made by another assessed for the same taxes under the statute.  See Hartman v. United States, 535 F.2d 1336, 1340 (8th Cir. 1976); Newsome v. United States, 431 F.2d 742, 745 (5th Cir. 1970).

Once a responsible person assessment has been made by the government pursuant to 26 U.S.C. § 6672, the taxpayer must prove, by a preponderance of the evidence, that he does not owe the tax.  See Caterino v. United States, 794 F.2d 1, 5 (1st Cir. 1986); United States v. Rexach, 482 F.2d 10, 16-17 (1st Cir. 1973); Kinnie, 994

F.2d at 283.  Thus, Francis Moore has the burden of proving that he was not a

responsible person or that he did not willfully fail to pay over the withheld taxes with

respect to American Legion Post # 368 for the periods in issue.

      2.    *Responsibility*

Liability as a responsible person is predicated upon the existence of significant,

as opposed to absolute, control over the corporation's finances.  See Vinick II, 205 F.3d

at 9; Caterino, 794 F.2d at 5 ("the word final means significant rather than exclusive

control over the disbursement of funds"); Gephardt, 818 F.2d at 473; Hochstein v.

United States, 900 F.2d 543, 547 (2nd Cir. 1990).  Financial involvement indicates that

the taxpayer not only was involved in the daily management of the company, but also

knew the financial circumstances and could have paid the government."  Vinick II, 205

F.3d at 10.   Fundamentally, responsibility "is a matter of status, duty, and authority."

Vinick v. United States (Vinick I), 110 F.3d 168, 172 (1st Cir. 1997); Thomsen v. United

States, 887 F.2d 12, 15 (1st Cir. 1979).  "The crucial inquiry is whether the person had

the effective power to pay the taxes – that is, whether he had the actual authority or

ability, in view of his status within the corporation, to pay the taxes owed."  Vinick II, 205

F.3d at 8.  A person can be responsible without having complete control over an entity's

financial affairs.  See, e.g., Denbo v. United States, 988 F.2d 1029, 1033 (10th Cir.

1993).  Furthermore, as is relevant in this case, a two-signature requirement on

checking accounts does not eliminate an individual's status as a responsible person.

See, e.g., Thomas v. United States, 41 F.3d 1109, 1114 (7th Cir. 1994); Godfrey v.

United States, 748 F.2d 1568, 1576 (Fed. Cir. 1984); Simpson v. United States, 664

F.Supp.2d 43, 48 (E.D. N.Y. 1987) (observing that if the need for two signatures on

- 10 -

1414273.3

checks was a defense to responsible person status, section 6672 could be subverted by implementing diffuse check-signing authority).

No single fact is in itself dispositive of whether a person is a responsible person under 26 U.S.C. § 6672, especially in a case such as this, where the taxes were not reported, withheld, segregated, or paid over.[5]  Certain facts, however, are considered by the court in analyzing whether a person is responsible, including whether such a person (1) is an officer or member of the board of directors; (2) is active in the management of the day-to-day affairs of the company; (3) makes decisions regarding which, when, and in what order outstanding corporate debts, including taxes, will be paid; (4) exercises control over bank accounts and disbursement records; and (5) has check signing authority.  See Vinick II, 205 F.3d at 7.

We will show at trial that in his role as Finance Officer, Mr. Moore had check-signing authority over the Post's checking account, and he controlled the books and records of the Post.  All invoices were presented to Mr. Moore for payment, and he determined which bills were to be paid and when.  For routine expenses, Mr. Moore prepared the checks for signature pursuant to his determination as to which bills needed to be paid, signed the checks, and then left those checks with the Commander for his counter-signature.  Even this double-signature requirement was superfluous, however, as Mr. Moore was offered a rubber stamp of the Commander's signature; the fact that he chose not to accept this offer does not in any way alter the reality that representatives of the Post depended on Frank Moore to pay the ordinary and

---

[5]  The IRS investigated, after the fact, to determine how much was owed by American Legion Post # 368 after its failure to report the wages paid to its employees.

1414273.3

necessary expenses of the Post, and these expenses should have included payment of the employment taxes.

In sum, the evidence will establish that Mr. Moore (1) was a member of the board of directors; (2) was active in the management of the day-to-day affairs of the Post; (3) made all decisions regarding which, when, and in what order outstanding debts would be paid; (4) exercised control over bank accounts and disbursement records; and (5) had check signing authority for all of the periods at issue.  He must be held responsible for the non-payment of these taxes.  See Vinick II, 205 F.3d at 7.

3.    *Willfulness*

Liability attaches to a "responsible person" under Section 6672 if he "willfully" fails to collect, account for, or pay over the withheld taxes.  "A responsible person acts willfully within the meaning of Section 6672 whenever 'he acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over by will be used for other purposes.'" Honey v. United States, 963 F.2d 1083, 1087 (8th Cir. 1992).  That a taxpayer acted willfully does not mean that he acted with a bad or evil motive; rather it means that the taxpayer makes a voluntary, conscious and intentional choice to pay creditors other than the United States.  See Thomsen, 887 F.2d at 17; Honey, 963 F.2d at 1087.  A responsible person has also acted willfully even if a superior instructed him not to pay the unpaid tax.  See Broustein v. United States, 979 F.2d 952, 956 (3rd Cir. 1992); Roth v. United States, 779 F.2d 1567, 1571-72 (11th Cir. 1986).   Finally, and importantly in this case, an individual acts willfully if he acts with a "reckless disregard" of a known or obvious risk of nonpayment.  See Vinick I, 110 F.3d at 172.

1414273.3

Mr. Moore's sole defense on this issue is his claim that he did not know that the bartenders and the bar manager were being paid, thus he did not know that an employment tax liability was being generated.  This claim will be wholly contradicted by the evidence.  Moreover, even if Mr. Moore's contentions are accepted at face value, he was nevertheless willful in his failure to collect, truthfully account for, or pay over the taxes because he acted with reckless disregard in this matter.

Francis Moore knew or should have known that the employment taxes were not being paid.  Mr. Moore was a revenue officer for the Internal Revenue Service for more than 29 years, and in this position was far more familiar than the ordinary businessman with the obligations of individuals to insure that employment taxes were being addressed properly.  Furthermore, and contrary to his assertions otherwise, Mr. Moore knew that the bartenders were being paid; he was present at every meeting at which this issue was discussed by the Board and he at least participated in the preparation of the Finance Committee Report; the information could not have been obtained without him.  We expect that Mr. Cannata will testify that he personally left a note each week in the in-box of the Finance Officer indicating how much he was removing from the cash till for his wages; an in-box that we will show Mr. Moore checked twice a week and in which all other invoices were placed.   As a result, the evidence will show that he willfully ignored his responsibility to insure that the Post was properly reporting these payments to the Internal Revenue Service, collecting monies to pay to the Internal Revenue Service as employment taxes, and paying these monies over to the Internal Revenue Service.

1414273.3

Mr. Moore may testify that he did not, in fact, know that wages were being paid, however, he had a responsibility to the Post to investigate and determine the true facts and the ramifications of those facts when he received Mr. Cannatta's weekly "stipend" notice, and certainly he should have discovered that the bartenders were receiving tips. If he credibly testifies that he did not know they were being paid, then he must be found to have recklessly disregarded this responsibility.   See, e.g., Thomsen v. United States, 887 F.2d 12, 18 (1st Cir. 1989) ("A responsible person is liable if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out very easily") (citations omitted).   Mr. Moore did not have the right to stick his head in the sand with regard to the employment tax liabilities, and he should have known better, he was responsible for the reporting, collecting, and/or paying over of these taxes and he utterly failed to satisfy this responsibility.

III.    **United States' Objections to Plaintiff's Exhibits**

The plaintiff has identified and provided to counsel for the United States twenty (20) exhibits that he seeks to introduce into evidence.[6]   The United States objects for the record to the admission of plaintiff's Exhibits No. 4, 5, 6, 7, 9, 10, 12, 15 and 19 on the grounds that these documents contain no information relevant to the matters to be decided by this Court.   Relevant evidence is "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more

---

[6]  The United States has no objection to the admission of Plaintiff's Exhibits No. 1, 2, 3, 11, and 18.

1414273.3

probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

This Court is making a de novo determination as to whether Mr. Moore is a responsible

person under 26 U.S.C. § 6672; thus only the facts and circumstances relating to Mr.

Moore's position at American Legion Post # 368 are relevant. The documents

propounded by Mr. Moore do not contain factual information relating to the issue of Mr.

Moore's responsibility, focusing instead on the IRS investigation of the Post for its

income tax liabilities and on Mr. Moore's correspondence with the IRS during the

assessment and appeal of his responsible person penalty. These documents simply

have no bearing on this matter.

The United States further objects to Plaintiff's Exhibits 8, 13, 14, 16, 17, and 20

and asserts that these documents are inadmissible and plaintiff must be precluded from

using them or referring to them in any way on the grounds delineated below.

### (1)    Plaintiff's Exhibits 8, 13 and 20

Exhibit 8 is a letter from Mr. Moore to the Internal Revenue Service dated

January 18, 2001, more than 5 years after the final period at issue, addressing the

appeal of his 26 U.S.C. § 6672 assessment. Because that determination, and indeed

the appeal process itself, is not relevant to the determination of responsible person

status to be made by this Court, and because this document contains extensive

hearsay, this document is inadmissible. Exhibit 13 is an undated statement written by

Mr. Moore and provided to counsel for the United States in February, 2004, more than

8 years after the periods at issue. This document also contains extensive hearsay and

is inadmissible. Exhibit 20 is a letter from Francis Moore to the Internal Revenue

1414273.3

Service dated November 22, 2002, more than 6 years after the periods at issue, regarding Mr. Moore's explanation as to what his role with the American Legion Post. The information contained in this letter, as with Exhibits 8 and 13, is hearsay and is inadmissible.

It is not clear for what purpose Mr. Moore intends to introduce these documents. To the extent that Mr. Moore is attempting to introduce these documents for the truth of the statements contained therein, they are hearsay, and Mr. Moore has not provided a viable exception to the hearsay rule such that these letters should be admitted into evidence. <u>See</u> Fed. R. Evid. 801, 802 & 803.   If Mr. Moore can identify an exception to the hearsay rules, or if he can establish that he is not, in fact, offering these documents for the truth of the matters contained therein, then the documents may well be admissible.  Based on the information thus far provided, these documents are inadmissible.

> (2)  *Plaintiff's Exhibit 14*

Plaintiff's Exhibit 14 is a partial copy of Case Activity Records maintained by the by the Revenue Officer assigned to this case.  The United States is unaware of the purpose for which Mr. Moore intends to use this document, but it appears that what the plaintiff is seeking to introduce is governmental thought process, which is inadmissible and irrelevant to this Court's de novo determination as to whether Mr. Moore was a responsible person pursuant to 26 U.S.C. § 6672.

The Court of Appeals for the Seventh Circuit addressed the United States' objections to the discovery of agency thought-processes based upon relevancy and the deliberative process privilege.  In <u>United States v. Farley</u>, 11 F.3d 1385, 1390-1391 (7th

- 16 -

1414273.3

Cir. 1993), the United States objected to the discovery of internal agency memoranda, discussions by agency employees of the matters that later were at issue in the litigation, the agency staff's views on the law that was at issue in the case, and the agency staff's recommendations for future actions.  The Seventh Circuit agreed with the United States, ruling that the requested information was not discoverable because it was irrelevant (and protected by the deliberative process privilege).  All that was required to resolve the issues in <u>Farley</u>, like the issues in the instant case, was to apply the facts to the law, and the agency staff's deliberative processes were found by the Court to be irrelevant to resolve the case.  The Seventh Circuit also held that "suppositions of [agency] staff members expressed in internal memoranda as to requirements [of the law at issue] are not pertinent to this task."  <u>Farley</u>, <u>supra</u> at 1390.  In this regard, the Seventh Circuit ruled:

> In its attempt to decipher the meaning of a statute a court may rely on various tools, including official agency interpretations.  <u>Chevron U.S.A. v. Natural Resources Defense Council</u>, 467 U.S. 837, 864-866, 104 S.Ct. 2778, 2792, 81 L.Ed.2d 694.  Courts may not, however, rely on unpublished opinions of agency staff.  <u>International Paper Co. v. Federal Power Comm'n</u>, 438 F.2d 1349, 1358-1359 (2nd Cir. 1971), certiorari denied, 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56 ("[V]iews of individual members of the [agency's] staff are not legally germane.").  The documents at issue here clearly fall in the latter category and as such are not germane to the court's inquiry.

<u>Farley</u>, <u>supra</u>.

In this case, unless Mr. Moore can identify another, more legitimate, basis for the admissibility of this document, it must be rejected.

1414273.3

(3)    *Plaintiff's Exhibits No. 16 and 17 - Internal Revenue Manual Section 5.7.3 and Policy Statement P-5-60*

Plaintiff lists Internal Revenue Service Policy Statement P-5-60 (reprinted as Part 1, Chapter 1.2 of the Internal Revenue Manual) and Internal Revenue Manual Part 5 Chapter 7 Section 3 as exhibits in this matter.  The United States asserts that these documents have no relevance to the liability of the plaintiff under 26 U.S.C. Sec. 6672, the only factual issue to be resolved at trial.

The United States can only assume that the plaintiff seeks to introduce these two portions of the Internal Revenue Manual for the purpose of showing that the IRS did not comply with its own policies and procedures – and thereby in some manner this invalidates the assessments against him.  The Court of Appeals for the First Circuit, in a case directly on point, rejected a similar effort by a taxpayer to introduce provisions of the Internal Revenue Manual. See United States v. Horne, 714 F.2d 206, 207 (1st Cir. 1983).[7]  In *Horne*, the First Circuit upheld a decision of the district court granting the Government's motion *in limine* to exclude evidence that the IRS acted inconsistently with the Internal Revenue Manual.  The Court held that an assessment was valid if it complied with the relevant statutes and regulations and "[w]hether or not it also complied with the rules contained in the Internal Revenue Manual has no bearing on its validity."  In finding the district court properly precluded the introduction into evidence of provisions of the Internal Revenue Manual, the Court also held (*quoting* Einhorn v.

---

[7]  Numerous Courts of Appeal also have addressed this issue and rejected it.  See e.g., Carlson v. United States, 126 F.3d 915, 925 (7th Cir. 1997)(noncompliance with the [IRS] manual itself does not render an action of the IRS invalid); Valen Mfg. Co. v. United States, 90 F.3d 1190, 1194 (6th Cir. 1996)(argument that assessments were invalid because of the IRS Manual rejected as "meritless").

1414273.3

DeWitt, 618 F.2d 347, 350 (5th Cir. 1980)) that the purpose of the Internal Revenue

Manual "is to govern the internal affairs of the Internal Revenue Service" and the

Manual does not "have the force and effect of law."[8]  As a result, the portions of the

Internal Revenue Manual that the plaintiffs seek to introduce as exhibits must be

excluded.


IV.    **Conclusion**

        The United States is entitled to judgment in this matter in the amount of

$18,123.90, plus interest accruing as a matter of law from January 28, 2003.


I hereby certify that a true copy of the
above document was served upon (each party
appearing pro se and) the attorney of record
for each other party by Federal Express on

11/14/05 - Lydia Bottome Turanchik

Respectfully Submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Lydia Bottome Turanchik
LYDIA BOTTOME TURANCHIK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6560
Lydia.D.Bottome@usdoj.gov

---

        [8]  The opinion in United States v. Leahey, 434 F.2d 7, 10-11 (1st Cir. 1970),dealing with provisions of the Internal Revenue Manual intended to protect taxpayers' constitutional rights, is inapposite here. See United States v.  Caceres, 440 U.S. 741 (1979), distinguishing between those provisions designed to carry out a constitutional provision and those which provide internal guidance for agency personnel.  The provisions upon which Mr. Moore would rely fall in the latter class.

    1414273.3